UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CLINT EDWARDS, :
          Plaintiff, :
v. :
      :    **OPINION AND ORDER**
JEREMY MANGION, M.D.; NATHANIEL :
RAWICKI, M.D.; ADAM SHANER, M.D.; :    20 CV 7370 (VB)
ASHLYN MORSE, M.D.; WILLIAM J. :
WALSH, M.D.; and CHRISTOPHER :
MELTSAKOS, M.D., :
          Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Clint Edwards, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983 against Drs. Jeremy Mangion, Nathaniel Rawicki, Adam Shaner, Ashlyn Morse, William J. Walsh, and Christopher Meltsakos for deliberate indifference to his medical needs in violation of the Eighth Amendment.

    Now pending are defendants' motions to dismiss the amended complaint pursuant to Rule 12(b)(6). (Docs. ##52, 58).[1]

    For the following reasons, the motions are GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor as summarized below.

---

[1] Drs. Mangion, Rawicki, Shaner, Morse, and Meltsakos moved to dismiss on September 7, 2021. (Doc. #52). Dr. Walsh separately moved to dismiss on September 13, 2021. (Doc. #58).

Plaintiff's claim arises out of the allegedly inadequate medical care he received while incarcerated at the Westchester County Jail from December 2018 through May 2019.

Plaintiff alleges that on November 30, 2018, he suffered a compound fracture to the humerus bone in his left arm following an altercation at the federal courthouse in White Plains, where plaintiff had been transferred for sentencing. Plaintiff contends that, shortly after that incident, he was transported to the emergency room at the Westchester Medical Center ("WMC"), where he was initially treated by doctors—not parties to this action—who told him his fracture required surgical intervention. According to the medical records attached to the amended complaint, plaintiff was referred to the orthopedic clinic at WMC, where plaintiff's humerus was successfully realigned by placing his arm in a splint. Plaintiff was then discharged and advised to return to the clinic in a few weeks for a routine check-up.

Plaintiff alleges that, from December 6, 2018, to May 16, 2019, he visited the WMC orthopedic clinic seven times for evaluation and treatment of his fracture by defendants.[2] The medical records state that during each visit, an X-ray of plaintiff's left arm was taken, his history was recorded, and a treatment plan was discussed and documented. Plaintiff alleges that during each visit, one of Drs. Rawicki, Morse, and Meltsakos—the resident/intern physicians at the clinic—performed plaintiff's evaluation, and one of Drs. Mangion, Shaner, and Walsh—the attending/supervising physicians at the clinic—discussed, reviewed, and approved the resident physician's findings and treatment plans.

According to the medical records, after each visit, each physician who evaluated plaintiff independently agreed upon "conservative," non-surgical treatment options for plaintiff's fracture,

---

[2] It is not clear from the amended complaint whether any of the defendants were also involved in plaintiff's initial orthopedic evaluation at the clinic on November 30, 2018.

despite plaintiff's repeated requests for surgery, and—according to plaintiff—the independent opinions of other medical professionals from other facilities who advised plaintiff that surgery was necessary. (Doc. #50-1 at ECF 27).[3] According to plaintiff, defendants "want[ed] to see if the fracture would heal by itself" with the aid of a brace, time without weight placed on the arm, and gradual physical therapy. (Doc. #50 ("Am. Compl.") at ECF 3). According to the medical records, these treatments initially yielded "adequate alignment" of plaintiff's fractured bone and at least some of the callus formation necessary for repair of the fracture. (See, e.g., Doc. #50-1 at ECF 8).

Plaintiff alleges that by April 25, 2019—the day of his penultimate visit to WMC—the healing of his fracture had stalled, and the motion in his arm was insufficiently stable. Plaintiff claims that during this visit, an assistant to Dr. Meltsakos privately confided in him that he should have had surgery months earlier. Plaintiff further alleges that in light of the slow progress in healing, Drs. Meltsakos and Walsh suggested surgery was a potential option "if [there was] continued lack of union and motion" in the arm in a few weeks. (Doc. #50-2 at ECF 3).

On May 16, 2019—the day of plaintiff's final visit to WMC—an X-ray and physical examination revealed additional callus growth and union, but continued insufficient stability. The medical records note that Drs. Morse and Shaner—the physicians who evaluated plaintiff that day—recommended additional non-surgical treatment in the form of calcium and vitamin D supplementation, with a follow-up appointment in four weeks. The records do not reflect any additional discussion of surgery.

---

[3] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff contends he never followed-up at WMC because he was transferred to another correctional facility shortly after the May 16, 2019, visit.

Plaintiff alleges he ultimately underwent two surgeries to repair the fracture, performed by a doctor affiliated with another correctional facility to which plaintiff was transferred. According to plaintiff, defendants' refusal to recommend surgery in the weeks or months following his injury caused unnecessary pain and suffering and continued instability in the arm.

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[4]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Eighth Amendment Claim

Defendants argue plaintiff fails plausibly to state a claim for deliberate indifference to medical needs under the Eighth Amendment.[5]

The Court agrees.

---

[5] Because the instant deliberate indifference claim arises out of an injury plaintiff allegedly sustained after being sentenced for a crime in federal court, it is clear from the face of the amended complaint that at all relevant times, plaintiff was a convicted prisoner, and not a pretrial detainee. (See Am. Compl. at ECF 11 (medical record noting "patient states he was in court today for sentencing")). Accordingly, plaintiff's claim is analyzed under the Cruel and Unusual Punishments Clause of the Eighth Amendment, not the Due Process Clause of the Fourteenth Amendment, which applies a less stringent mens rea analysis. See Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

A. <u>Legal Standard</u>[6]

To state a claim for deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). This test has an objective prong and a <u>mens rea</u> prong: a plaintiff must plausibly allege (i) a "sufficiently serious" "deprivation of adequate medical care," and (ii) that the defendants acted with a "sufficiently culpable state of mind." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." <u>Salahuddin v. Goord</u>, 467 F.3d at 279. Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." <u>Id</u>. at 280.

The <u>mens rea</u> prong requires a showing that the defendant was aware of the plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. See <u>Salahuddin v. Goord</u>, 467 F.3d at 280. "[T]he charged official must act with a sufficiently culpable state of mind." <u>Id</u>. "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was aware of facts from which one could infer that a

---

[6] It is not clear from the amended complaint whether defendants, who appear to be private physicians, were acting under the color of state law, as they must to be held liable under Section 1983. Nor have defendants moved to dismiss on this issue. Nevertheless, the Court assumes for the purpose of this motion, without deciding, that defendants were acting under color of state law. See <u>Bektic-Marrero v. Goldberg</u>, 850 F. Supp. 2d 418, 427 (S.D.N.Y. 2012) ("[C]ourts in this Circuit sometimes find state action even in cases where the medical care was administered away from the prison.").

6

substantial risk of serious harm existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order).[7]

"Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). For example, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." Id. Moreover, allegations that a defendant recommended a medical treatment "not on the basis of their medical views, but because of monetary incentives," or some other ulterior motive, may also plausibly demonstrate a deliberate indifference claim. Id. at 704. Likewise are allegations that the defendant "deliberately ignored" the diagnoses and recommendations of medical personnel qualified to make them. Johnson v. Wright, 412 F.3d 398, 405 (2d Cir. 2005).

B.   Application

Here, plaintiff fails plausibly to plead the mens rea component of the deliberate indifference claim because he does not allege any facts suggesting any defendant "actually drew [an] inference" that a substantial risk of harm would result from not recommending surgery. Dotson v. Fischer, 613 F. App'x at 38.

First, plaintiff fails to allege any facts suggesting any defendant knew of, much less "deliberately ignored" a recommendation from another medical professional that surgery may be necessary to address plaintiff's fracture. See Johnson v. Wright, 412 F.3d at 405. At most, plaintiff alleges that on three different instances during this period, three groups of non-party doctors or other medical personnel independently confided in plaintiff that his fracture required

---

[7]   Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

surgery.  However, nothing in the amended complaint plausibly suggests those views were communicated to any defendant in the course of their evaluation of treatment.  And although Drs. Morse and Shaner arguably disagreed with Drs. Meltsakos and Walsh, who had both previously recommended at least considering surgery for plaintiff's fracture, the medical records make clear that surgery was never formally recommended by either physician.  Moreover, the actions Drs. Morse and Shaner allegedly took instead—prescribing vitamin D and calcium—plausibly reflect no more than a genuine difference of opinion rather than deliberate indifference to plaintiff's medical needs.

      Second, nothing in the amended complaint suggests plaintiff's condition had deteriorated so significantly that defendants <u>must</u> have drawn the inference that surgery was necessary, even in the absence of a recommendation from another doctor to that effect.  To the contrary, the medical records reflect defendants' approach at least yielded marginally improved growth of the callus necessary to repair plaintiff's fracture over time.  The records also reflect plaintiff's pain gradually improved over time, such that he began reporting his pain was merely "intermittent," "controlled," or even non-existent.[8]  (<u>See</u>, <u>e.g.</u>, Am. Compl. at ECF 31; Doc. #50-1 at ECF 22, 27).  Finally, the records indicate that when the physical condition of plaintiff's arm did, in fact, stall or deteriorate, Drs. Meltsakos and Walsh put surgery on the table as a potential option.

      Third, the amended complaint contains no allegations plausibly suggesting any defendant's non-surgical recommendations were based on anything other than his or her expert medical judgment as an orthopedic surgeon.  For example, plaintiff alleges defendants "chose

---

[8]     Although plaintiff alleges he complained of "extreme pain" during each of his seven visits to the WMC (Am. Compl. at ECF 3–5, 7), those allegations are expressly contradicted by the medical records attached to the amended complaint, and are thus not entitled to the presumption of truthfulness normally applied at the motion to dismiss stage.  <u>See</u> <u>Kirkendall v. Halliburton, Inc.</u>, 707 F.3d 173, 175 n.1 (2d Cir. 2013).

[an] easier and less efficacious treatment plan" because "[t]hey knew if they did the surgery it would of took a lot of work" (Am. Compl. at ECF 8–9), but he offers no additional facts to support that or any other ulterior motive.  Rather, the medical records reflect defendants continuously adjusted their proposed treatment plans to address plaintiff's worsening condition, by, among other things, dialing back physical therapy, putting surgery on the table, and prescribing vitamin D and calcium supplements once the lack of growth became clear.  In the absence of any facts suggesting an ulterior motive for these adjustments, the only plausible inference raised by such allegations is that defendants' recommendations were based on a genuine "concern for plaintiff's well-being," even if those determinations were ultimately mistaken.  Benjamin v. Galeno, 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005) (defendant doctor's delay in surgery failed to satisfy subjective prong of deliberate indifference analysis as a matter of law when evidence suggested "plaintiff was well attended to for his multiple medical conditions"), aff'd sub nom. Benjamin v. Koeningsmann, 204 F. App'x 979 (2d Cir. 2006).

      Fourth, plaintiff's well-pleaded allegations that other doctors independently advised him his surgery should have been performed months earlier gives rise, at most, to a state-law claim for medical malpractice.  But "[m]edical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness."  Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011).  Here, plaintiff alleges he requested, and should have received, surgery at an earlier date.  However, the medical records demonstrate defendants followed a consistent, non-surgical approach throughout the course of treatment until they observed slowed progress and began to discuss a surgical option thereafter.  Plaintiff "may disagree with the treatment he did receive, but such disagreements are not evidence of a violation of the Eighth Amendment."

Veloz v. State of New York, 339 F. Supp. 2d 505, 527 (S.D.N.Y. 2004), aff'd, 178 F. App'x 39 (2d Cir. 2006) (summary order).

Accordingly, plaintiff's deliberate indifference to medical needs claim must be dismissed.[9]

III.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to a pro se litigant, who "should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). But "a futile request to replead should be denied." Id.

Here, the Court previously granted plaintiff leave to amend his original complaint after Dr. Walsh moved for judgment on the pleadings and the remaining defendants moved to dismiss the original complaint. (Docs. ##50, 51). "Plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." Jeanty v. Newburgh Beacon Bus Corp., 2018 WL 6047832, at *12 (S.D.N.Y. Nov. 19, 2018) (denying leave to amend for pro se plaintiff).

---

[9]   In his opposition to the motions, plaintiff states "[t]here [are] no state law claims" in the amended complaint. (Doc. #65). Nevertheless, to the extent the amended complaint can be construed as asserting state-law claims, the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).

In addition, the amended complaint contains no allegations suggesting plaintiff has a valid claim against defendants that he has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, repleading here would be futile, because the problem with this claim is substantive, such that improved pleading will not cure its deficiencies. Specifically, because there is no indication from the allegations of the amended complaint or the voluminous medical records attached thereto that any defendant knew of and disregarded a serious risk of harm to plaintiff by opting to treat his fracture without surgery, plaintiff will be unable sufficiently to allege the mens rea prong of the deliberate indifference test.

Accordingly, the Court will not grant leave to amend because there is no "possibility that such an amendment will result in a claim being successfully pleaded." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999).

## CONCLUSION

The motions to dismiss are GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions (Docs. ##52, 58) and close this case.

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated: April 25, 2022
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge